```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X
                                   :
   UNITED STATES OF AMERICA        :
                                   :
           - v. -                  :   SEALED INDICTMENT
                                   :
   SCOTT ROBINSON and               :   20 Cr.
   SCOTT MANGINI,                  :
                    Defendants.    :   20 CRIM 162
                                   :
- - - - - - - - - - - - - - - - - X
```

### Background

1. Professional horse racing is a $100 billion industry, which draws millions of fans each year in the United States and around the world. Racehorses may sell at auction for well more than $1,000,000 and compete for purses of up to and beyond the same amount. In the United States, the horse racing industry is subject to an array of federal and state regulations aimed at protecting participating horses and ensuring fair competition, among other things. These regulations include proscription of the use of performance-enhancing drugs ("PEDs") and testing regimes designed to ensure that racehorses are not under their influence.

2. Between at least 2011 and at least February 2020, SCOTT ROBINSON and SCOTT MANGINI, the defendants, and others known and unknown, engaged in multiple iterations of a scheme to create, manufacture, sell, and ship adulterated and misbranded PEDs

intended to be secretly administered to racehorses for the purpose of improving those horses' race performance, and to obtain prize money for the horses' owners and trainers as a result. Over the course of the scheme, ROBINSON and MANGINI sold millions of dollars' worth of various misbranded and adulterated PEDs to customers across the United States and abroad.

3. From at least 2011 up to and including at least 2016, SCOTT ROBINSON and SCOTT MANGINI, the defendants, collaborated to operate a series of online marketplaces at which the public, including racehorse trainers and owners, could procure misbranded and adulterated PEDs for administration to racehorses. These websites were created and designed to appeal to racehorse trainers and owners, and included: "HorsePreRace.com" and "HorseGold.com" (the "Horse PED Sites").

4. The PEDs SCOTT ROBINSON and SCOTT MANGINI, the defendants, marketed and distributed on the Horse PED Sites, included:

   a. "Blood builders": The term "blood builders" refers to PEDs used by horse trainers and others to increase red blood cell counts and/or the oxygenation of muscle tissue of a racehorse in order to stimulate the horse's endurance. This stimulation in turn enhances that horse's performance in, and recovery from, a race. The FDA-approved trade name drug "Epogen" is one such example. Among other things, "blood builders," when

combined with intense physical exertion, thicken the racehorse's blood, thereby causing increased cardiac exertion and pressure, which can lead to cardiac issues or death.

      b.  Customized Analgesics: Various "pain shots" or "joint blocks" are used as analgesic PEDs to deaden a horse's nerves and block pain in order to improve a horse's race performance. Among other things, customized analgesics mask physical injuries in a racehorse, which can cause a racehorse to overexert itself during periods of intense physical exercise, and thereby sustain a leg fracture or break during a race. Oftentimes, racehorses that sustain leg fractures or breaks are euthanized.

      c.  "Red acid": The substance often referred to by the defendants and others as "red acid" refers to a set of customized PEDs designed, in part, to reduce inflammation in joints, thereby improving a horse's race performance. Similar to customized analgesics, "red acid," among other things, is administered to mask physical injuries in racehorses, thereby increasing the risk of injury while racing.

    5.  SCOTT ROBINSON, the defendant, is neither a veterinarian nor a pharmacist. ROBINSON and, others known and unknown, first partnered with SCOTT MANGINI, the defendant, to create and distribute misbranded and adulterated PEDs in or about 2011. ROBINSON contributed to the misbranding operation by, among other things, sourcing chemicals used to create custom PEDs;

falsely labeling, packaging, and shipping those PEDs to customers across the country, including in the Southern District of New York; and collecting, reporting, and responding to employee and customer complaints regarding the defendants' misbranded and adulterated products.

6. SCOTT MANGINI, the defendant, was a licensed pharmacist in Florida until early 2016, when state authorities suspended his license for violations including adulterated and/or misbranded drugs in a laboratory he operated, and a lack of records reflecting how MANGINI had acquired certain prescription drugs. MANGINI has never been a licensed physician, veterinarian, or drug manufacturer. Since at least in or about 2011 through the present, MANGINI has been involved in the creation, production, marketing, and distribution of new animal drugs, including with SCOTT ROBINSON, the defendant. In or about 2016, MANGINI stopped working with ROBINSON. Thereafter, ROBINSON and MANGINI operated separate PED manufacturing and distributing operations. ROBINSON, along with others known and unknown, conducted his operation under the name "RUI Labs" and/or "RUI Products," while MANGINI, and others known and unknown, conducted his own distribution of misbranded and adulterated PEDs via an online marketplace, "RaceHorseMeds.com."

7. At all times relevant to this Indictment, the PEDs created and produced by SCOTT ROBINSON and SCOTT MANGINI, the

4

defendants, were misbranded and adulterated in several ways. First, all of those PEDs were manufactured in facilities not duly registered with the U.S. Food and Drug Administration ("FDA"). Second, those PEDs were labeled with incomplete, false and misleading information, including deficient or false information regarding the PEDs' manufacturer, packer, distributor, contents, and direction for use. Third, the defendants caused PEDs that required a valid prescription to be distributed and administered without a prescription. Fourth, the defendants' PEDs uniformly lacked requisite FDA approvals. Moreover, the defendants' PEDs were designed by the defendants in part to avoid detection through anti-PED testing by state regulators, the FDA, and/or racetracks at which horses doped with the defendants' products would run.

8. On or about September 30, 2019, the Federal Bureau of Investigation ("FBI") and the FDA conducted a judicially authorized search of a PED manufacturing and distribution facility operated by SCOTT ROBINSON, the defendant, and seized misbranded and adulterated PEDs, chemicals, and electronic equipment they found therein. Photographs of some of the drugs seized from this search follow:





### COUNT ONE
(Drug Adulteration and Misbranding Conspiracy:
Robinson and Mangini)

The Grand Jury charges:

9. The allegations set forth above in Paragraphs 1 through 7 are realleged and incorporated by reference as if set fully forth herein.

10. From at least in or about 2011 through at least in or about 2016, in the Southern District of New York and elsewhere,

SCOTT ROBINSON and SCOTT MANGINI, the defendants, together with others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, violations of Title 21, United States Code, Sections 331 and 333(a)(2).

11. It was a part and an object of the conspiracy that SCOTT ROBINSON and SCOTT MANGINI, the defendants, together with others known and unknown, with the intent to defraud and mislead, would and did introduce and deliver for introduction, and would and did cause the introduction and delivery for introduction, into interstate commerce, adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2).

12. It was further a part and an object of the conspiracy that SCOTT ROBINSON and SCOTT MANGINI, the defendants, together with others known and unknown, with the intent to defraud and mislead, in interstate commerce, would and did adulterate and misbrand drugs, and would and did cause the adulteration and misbranding of drugs in interstate commerce, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(b) and 333(a)(2).

13. It was further a part and an object of the conspiracy that SCOTT ROBINSON and SCOTT MANGINI, the defendants, together with others known and unknown, with the intent to defraud

and mislead, would and did receive in interstate commerce adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, and deliver and proffer delivery thereof for pay and otherwise, and would and did cause the receipt in interstate commerce of adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, and cause the delivery and proffered delivery thereof for pay and otherwise, in violation of 21 U.S.C. §§ 331(c) and 333(a)(2).

### Overt Acts

14. In furtherance of the conspiracy and to effect the illegal objects thereof, SCOTT ROBINSON and SCOTT MANGINI, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

   a. In or about September 2014, ROBINSON and MANGINI shipped PEDs marketed via HorsePreRace.com to a customer located in the Southern District of New York.

   b. In or about January 2016, ROBINSON and MANGINI sold and distributed a particular PED ("PED-1"), which was misbranded and adulterated, to a customer of ROBINSON and MANGINI's jointly operated PED manufacturing and distribution business.

   c. On or about January 2, 2016, ROBINSON forwarded the following customer complaint to MANGINI: "I

[customer] ordered some [PED-1] . . . starting bout 8 hours after I give the injection and for about 36 hours afterwards both my horses act like they are heavily sedated, can barely walk. Could I have a bad bottle of medicine, I'm afraid to give it anymore since this has happened three times." Commenting on this complaint, ROBINSON wrote, "here is another one."

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Drug Adulteration and Misbranding Conspiracy: Robinson)

The Grand Jury further charges:

15. The allegations set forth above in Paragraphs 1 through 8 are realleged and incorporated by reference as if set fully forth herein.

16. From at least in or about 2016 through at least in or about October 2019, in the Southern District of New York and elsewhere, SCOTT ROBINSON, the defendant, together with others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, violations of Title 21, United States Code, Sections 331 and 333(a)(2).

17. It was a part and an object of the conspiracy that SCOTT ROBINSON, the defendant, together with others known and unknown, with the intent to defraud and mislead, would and did introduce and deliver for introduction, and would and did cause

9

the introduction and delivery for introduction, into interstate commerce, adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2).

18. It was further a part and an object of the conspiracy that SCOTT ROBINSON, the defendant, together with others known and unknown, with the intent to defraud and mislead, in interstate commerce, would and did adulterate and misbrand drugs, and would and did cause the adulteration and misbranding of drugs in interstate commerce, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(b) and 333(a)(2).

19. It was further a part and an object of the conspiracy that SCOTT ROBINSON, the defendant, together with others known and unknown, with the intent to defraud and mislead, would and did receive in interstate commerce adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, and deliver and proffer delivery thereof for pay and otherwise, and would and did cause the receipt in interstate commerce of adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, and cause the delivery and proffered delivery thereof for pay and otherwise, in violation of 21 U.S.C. §§ 331(c) and 333(a)(2).

**Overt Acts**

20. In furtherance of the conspiracy and to effect the illegal objects thereof, SCOTT ROBINSON, the defendant, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

    a. On or about November 5, 2017, ROBINSON, in electronic messages with a wholesale distributor whose warehouse was based in the Southern District of New York, ordered a bulk delivery of a substance that ROBINSON would subsequently package, label, and resell as a race horse PED.

    b. In or about September 2019, ROBINSON, and others known and unknown, packaged and offered for sale a misbranded and adulterated PED labeled "RUI-LABS . . . Liquid Viagra . . . For Research Purposes Only. Not for human consumption."

(Title 18, United States Code, Section 371.)

**COUNT THREE**
**(Drug Adulteration and Misbranding Conspiracy: Mangini)**

The Grand Jury further charges:

21. The allegations set forth above in Paragraphs 1 through 7 are realleged and incorporated by reference as if set fully forth herein.

22. From at least in or about March 2017 through at least in or about February 2020, in the Southern District of New

York and elsewhere, SCOTT MANGINI, the defendant, together with others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, violations of Title 21, United States Code, Sections 331 and 333(a)(2).

23. It was a part and an object of the conspiracy that SCOTT MANGINI, the defendant, together with others known and unknown, with the intent to defraud and mislead, would and did introduce and deliver for introduction, and would and did cause the introduction and delivery for introduction, into interstate commerce, adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2).

24. It was further a part and an object of the conspiracy that SCOTT MANGINI, the defendant, together with others known and unknown, with the intent to defraud and mislead, in interstate commerce, would and did adulterate and misbrand drugs, and would and did cause the adulteration and misbranding of drugs in interstate commerce, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(b) and 333(a)(2).

25. It was further a part and an object of the conspiracy that SCOTT MANGINI, the defendant, together with others known and unknown, with the intent to defraud and mislead, would

and did receive in interstate commerce adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, and deliver and proffer delivery thereof for pay and otherwise, and would and did cause the receipt in interstate commerce of adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, and cause the delivery and proffered delivery thereof for pay and otherwise, in violation of 21 U.S.C. §§ 331(c) and 333(a)(2).

### Overt Acts

26. In furtherance of the conspiracy and to effect the illegal objects thereof, SCOTT MANGINI, the defendant, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

    a. On or about August 7, 2018, MANGINI accepted payment in return for the shipment of PED-1 to a recipient with an address located in Manhattan, New York.

    b. On or about December 18, 2019, MANGINI shipped and caused to be shipped, via the United States Postal Service, approximately 24 parcels of race horse PEDs from a location in Florida to, among other locations, Arizona, California, Kentucky,

Louisiana, Michigan, Missouri, Ohio, Oklahoma, Pennsylvania, Tennessee, Texas, Utah, Washington, and the Spanish island of Mallorca.

(Title 18, United States Code, Section 371.)

_____    _____
FOREPERSON                            GEOFFREY S. BERMAN
                                      United States Attorney

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

UNITED STATES OF AMERICA

- v. -

SCOTT ROBINSON and SCOTT MANGINI,

Defendants.

### SEALED INDICTMENT

20 Cr.

(18 U.S.C. § 371.)

GEOFFREY S. BERMAN
United States Attorney.

A TRUE BILL

Foreperson.